## LAW v. THE ILLINOIS CENTRAL RAILROAD Co.

Railroad: REGULATIONS AFFECTING PASSENGERS. It seems that a railroad company has the right to make a resolution requiring all passengers to purchase tickets before taking passage in a caboose car attached to a freight train, and to enforce this rule upon any person failing to comply with it, by ejecting him from the car in a proper place and manner. But if this should be so improperly done as to endanger life or person, as while the cars were in motion, the company would be liable.

*Appeal from Dubuque Circuit Court.*

THURSDAY, DECEMBER 7.

ACTION in ordinary to recover damages for being put off a train by one of the defendant's conductors. The cause was tried to the court without a jury, and resulted in a judgment for the plaintiff for $500. The defendant appeals. The facts are set forth in the opinion.

*Crane & Rood* for the appellant.

*D. C. Cram* and *J. Rogers* for the appellee.

COLE, J. — The plaintiff arrived on the Dubuque and Southwestern railroad at Farley, where that road connects with the defendant's road, about a half hour ahead of time. He got his supper there, talked a moment with the landlord, and then walked to the defendant's train, a heavy freight train, bound for Dubuque, and got on to the rear end of the "caboose car." The train started directly after the plaintiff got on, and as he entered the car he was met by the conductor, who demanded a ticket. The plaintiff told the conductor that he had not time to buy a ticket and attend to his affairs, and offered a five or ten-dollar bill out of which to take his fare, and offered to buy a ticket at the next station. The conductor told him, and truthfully, that he was not permitted to take fare, nor,

under any circumstances, to allow passengers to ride on the freight trains unless they have freight-train tickets. Printed notice to this effect was duly posted in the depot at Farley at that time. The plaintiff was desirous of going to Dubuque, and the transaction occurred on the 28th day of September, 1870, a little after seven o'clock in the evening, and when it was dark and rainy.

So far as the foregoing facts are concerned there is no conflict. But the plaintiff testifies further, that the conductor took him by the shoulder, when about three or three and a half blocks from the depot, told him that " business was business," and shoved him off the rear car of the train, while it was moving at the rate of from three to ten miles an hour ; that it was dark and rainy, and as he struck the ground he fell on his left side on some scattering stones, with his back to the train, receiving a bruise on his shin, hip and left side; had a pain in his side for two or three weeks, and even now when he took cold ; and used liniment on his shin and a blister on his side ; that a physician was consulted, though no bones were broken, and he had been able to be on his feet and attend to business all the time, but did no manual labor for two or three weeks; that he did not step off the car, nor did the conductor have a lantern in his hand.

For the defendant, the conductor testified, that he told plaintiff that he could not take fare from him and he would have to get off, that "business was business;" that he held his lamp for plaintiff, who was standing on the lower step of the caboose car, and stepped off and lit on his feet and did not fall down; that the train had not got more than the length of a car from the depot platform and was not going over four miles per hour. Another witness for defendant, who was standing on the east end of the platform, testified, that he saw plaintiff step off the car while the conductor held a lamp for him, over him ; that he did not see the conductor touch him and, if he had done so,

witness would have seen it; that plaintiff did not fall when he stepped off. A brakeman on the train also testified, that after plaintiff got on, the conductor asked him for his ticket and he said he had none, and then the conductor told witness to stop the train; witness went up on the car to set the brakes, gave the engineer a signal to stop, and, on looking back, saw the plaintiff walking back from the train which was about one and a half or two car lengths from the depot. This was all the evidence.

The cause having been submitted to the court, the finding of the court stands as the verdict of a jury. This has been often so held. There is a direct conflict in the evidence upon the facts material to the plaintiff's recovery, and, while we do not see from the evidence as certified to us why credit should be given to the unsupported testimony of the plaintiff, instead of, to the equally plausible statements of the more numerous and less directly interested corroborative witnesses of the defendant, yet the court had all these witnesses personally before it, and their oral statements were heard precisely as made, and a full opportunity was afforded to judge from their manner and conduct while testifying, as well as from their matter, as to the degree of credit to which each was entitled. For these and other reasons, the rule is very well settled that, in cases of such conflict, an appellate court will not interfere with the finding of a jury, or of a court exercising the functions of a jury.

Upon the law of the case we do not understand that counsel materially differ. That the defendant had the right to make the regulation requiring the plaintiff and all others to procure a ticket before taking passage in a caboose car attached to the freight train, cannot reasonably be questioned. See *The C. C. & C. R. Co.* v. *Bartram*, 11 Ohio St. 457. The right to eject from the car, in a proper place and manner, any person who shall fail to comply with such reasonable regulation must also exist.

The liability of the defendant in this case rests upon the improper manner of exercising this right. No one should be ejected remote from a station, nor while the car is in motion so as to endanger his life, limb or person. Subject to these, the right to use such reasonable force, as is necessary to accomplish the result, cannot be doubted. The court must have found that the plaintiff was forcibly ejected while the train was in motion and that he was injured thereby. It is claimed that the damages are excessive. The judgment is certainly for more than we would have given; but we can see no sound principle upon which we can interfere. The plaintiff's life may have been imperiled, even if his injuries were slight. For this he is entitled to compensation.

Affirmed.